IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-03344-REB-MEH

MEL BOMPREZZI,

    Plaintiff,

v.

DR. JOAN KAPRIVNIKAR,

    Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is the Plaintiff's request to "Stop Dr. Kaprivnikar Now!" [filed March 29, 2012; docket #26], which has been construed as a motion for preliminary injunction pursuant to Fed. R. Civ. P. 65(a). (Docket #31.) Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the motion has been referred to this Court for recommendation. (Docket #27.) The matter is fully briefed, and the Court finds that oral argument would not materially assist in the adjudication of the motion. For the reasons that follow, this Court respectfully recommends that the Plaintiff's motion be **denied**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

## BACKGROUND

Plaintiff is a prisoner in Colorado proceeding *pro se* who initiated this civil rights action on December 21, 2011 by filing his Complaint; subsequently, on February 7, 2012, he filed an Amended Complaint, in accordance with a court order, alleging generally that Defendant has administered "involuntarily" anti-psychotic drugs to the Plaintiff. Amended Complaint, docket #11 at 3. Plaintiff contends that the Defendant uses physical force to inject the drugs, and such drugs result in "body malfunctions." *Id.* Plaintiff filed the present motion on March 29, 2012. Plaintiff asserts that the "involuntary intoxication keeps me drugged and keeps me from thinking clearly ... in order to proceed in case #11-cv-03344, I need to be off of the drugs and not be intoxicated by antipsychotic [sic] side effects." Docket #26 at 1. Although not plainly stated, the Plaintiff appears to request an urgent order preventing Defendant from administering anti-psychotic drugs.

## DISCUSSION

A preliminary injunction is an extraordinary remedy that should be granted only when the moving party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). In the Tenth Circuit, a party requesting a preliminary injunction must clearly establish that: (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Id.* The burden is on the movant to establish his right to the relief requested. *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975).

Moreover, "[b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, the Tenth Circuit has identified the following three types of specifically disfavored preliminary injunctions ... (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3)

preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Schrier*, 427 F.3d at 1258-59 (citations omitted). These disfavored injunctions are "more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 1259.

Here, Plaintiff appears to seek a preliminary injunction that would require Defendant to act in a way that (Plaintiff alleges) is contrary to Defendant's prior practices, *i.e.*, to stop administering to Plaintiff the anti-psychotic drugs. Given the relief Plaintiff appears to seek, the relief sought would alter the status quo rather than preserve it and would also require Defendant to engage in affirmative actions. For these reasons, the injunctive relief sought by Plaintiff "constitutes a specifically disfavored injunction" that "must be more closely scrutinized." *Schrier,* 427 F.3d at 1259, 1261.

## I.     Irreparable Injury

It is well established that "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (citations omitted).

Here, the Plaintiff must first show that he will suffer irreparable injury if his request for injunctive relief is denied. *Id.* at 1258. "To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.'" *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wisconsin Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C. Cir. 1985)). Irreparable harm is more than "merely serious or substantial" harm. *Id.* (citation omitted). The party seeking the preliminary injunction "must show that 'the injury complained of is of such *imminence* that there is a clear and present need for equitable relief' to prevent irreparable harm." *Id.* (emphasis in

3

original) (citation omitted).

A possibility of future harm is too speculative to justify granting preliminary injunctive relief. *See Sims v. New*, 2008 WL 5044554, at *2 (D. Colo. Sept. 2, 2008), *aff'd*, 2008 WL 5050075 (D. Colo. Nov. 18, 2008) (inmate's speculation that he *may* suffer acts of retaliation, including a transfer, without more, does not establish irreparable harm for purposes of imposing injunctive relief). "[A] plaintiff satisfies the irreparable harm requirement by demonstrating 'a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages.... *Purely speculative harm will not suffice....*" *RoDa Drilling Co v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (emphasis added); *see also Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003) (agreeing with the proposition that "purely speculative harm does not amount to irreparable injury" and holding "that a plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative"); *Maximus, Inc. v. Thompson*, 78 F. Supp. 2d 1182, 1189 (D. Kan.1999) ("Speculation or unsubstantiated fears of what may happen in the future cannot provide the basis for a preliminary injunction.").

Plaintiff alleges here that, on the medication "Zyprexa," suicidal thoughts are not intense but are present, he is unable to "function at full capacity," he sleeps twelve hours a day, he has hunger pangs, he defecates irregularly, he is sensitive to noises, and his bones are thinning. None of these ailments constitutes an irreparable immediate harm that will occur if the Court denies Plaintiff's request for preliminary injunctive relief. Therefore, the Court finds that Plaintiff has failed to clearly establish his injury is "of such imminence that there is a clear and present need for equitable relief," as required to impose disfavored injunctive relief in this matter.

However, in his Amended Complaint, the Plaintiff alleges (what appears to be) a Fourteenth Amendment due process claim titled, "involuntary medications prescription as slavery," and "cruel and unusual punishment of involuntary medications," which the Court construes as a claim for

4

violation of his Eighth Amendment right to be free from cruel and unusual punishment. I am aware that a presumption of irreparable injury exists where constitutional rights are infringed. *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) (holding that a presumption of irreparable injury exists where plaintiff claimed that monetary relief would not properly redress the violation of his right to free exercise of religion caused by previous denials of pastoral visits). Thus, to be entitled to a presumption of irreparable injury, the Plaintiff must establish a substantial likelihood of success on his constitutional claim.

**II.     Substantial Likelihood of Success on the Merits**

The Due Process Clause of the Fourteenth Amendment guarantees due process only when a person is to be deprived of life, liberty, or property. U.S. Const. amend. XIV, § 1. The Due Process Clause "shields from arbitrary or capricious deprivation those facets of a convicted criminal's existence that qualify as 'liberty interests.'" *Harper v. Young*, 64 F.3d 563, 564 (10th Cir. 1995), *aff'd*, 520 U.S. 143 (1997). Thus, when an inmate alleges a violation of his due process rights, the court must first determine whether a liberty interest exists. Liberty interests protected by the Fourteenth Amendment may arise either from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983), *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by

alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney,* 509 U.S. 25, 35 (1993); *Estelle,* 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id*. (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006), *overruled on other grounds by Robbins v. Okla*., 519 F.3d 1242 (10th Cir. 2008)). The Tenth Circuit established "a medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Horton v. Ward*, 123 F. App'x 368, 371 (10th Cir. 2005) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2005)).

The subjective component is met if the plaintiff demonstrates defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838). This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)). Substantial harm includes "lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

Here, Plaintiff contends that Defendant's "decision to involuntarily intoxicate me [with anti-psychotic medication] violates the U.S. Constitution's 13th Slavery Amendment because involuntary intoxication perpetration is not listed on my criminal mittimus. ... The body malfunctions that these toxins cause make it cruel and unusual punishment." Amended Complaint, docket #11 at 3. Defendant counters that the Supreme Court has held "[a]n offender may be forced to take psychotropic drugs if his mental illness poses a danger to himself or to others." Response, docket #36 at 4 (citing *Washington v. Harper*, 494 U.S. 210, 227 (1990)). Furthermore, "the Eighth Amendment is not violated by forcible administration of antipsychotic medication to an offender, when it has been administered for legitimate reasons of security or medical need." *Id.* (citing *Singleton v. Norris*, 319 F.3d 1018 (8th Cir. 2003)). Plaintiff replies that this is an "ambiguous element to prove" and that "there are many subjective opinions in this stage of the proceedings." Reply, docket #38 at 6, 7.

In *Washington v. Harper*, the Supreme Court found that an offender "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." 494 U.S. at 221-22. At the same time, however, the involuntary administration of antipsychotic drugs that are prescribed, reviewed and ordered by a psychiatrist in the offender's medical interests, given the legitimate needs of the offender's institutional confinement, will meet the demands of the Due Process Clause. *Id.* at 222. "Prison officials have a duty to care for their inmate population, and using antipsychotic medications is an appropriate medical response in certain situations." *Boyett v. County of Washington*, 282 F. App'x 667, 676-77 (10th Cir. 2008).

At this early stage in the litigation, of course, there are (and would be) no findings as to whether the drugs administered to the Plaintiff were properly ordered upon a determination that the

7

Plaintiff is a danger to himself or to others, and that the drug treatment is in the Plaintiff's medical interest. However, the Plaintiff provides no information other than his own allegations that the antipsychotic drugs are unwanted and unnecessary, and have caused him to suffer certain ailments. Thus, the Court finds that the Plaintiff has failed to establish a substantial likelihood he will succeed in demonstrating the Defendant violated a significant liberty interest or subjected him to a serious risk of substantial harm. *See Kikumura*, 242 F.3d at 955 (movant seeking a preliminary injunction that would disturb the status quo must demonstrate not only a substantial likelihood of success on the merits, but also that the factor weighs heavily and compelling in his favor). Consequently, the Court finds that Plaintiff has failed to demonstrate a presumption of irreparable harm necessary to impose a preliminary injunction that would alter the status quo in this case.

**III.     Balance of Hardships**

Defendant contends that "[t]he Court's interference with the CDOC's ability to provide the appropriate medical treatment for its offenders as determined with the medical professionals charged with treating the offenders would significantly undermine the CDOC's discretion and autonomy." Response, docket #36 at 5-6. Plaintiff counters that, although a preliminary injunction might undermine the CDOC's discretion and autonomy, it would also "cease placing him in harm's way." Reply, Docket #38 at 5. The Court finds that, considering the lack of irreparable injury in this case, the burden on Defendant (and to the public, in general) outweighs any harm the Plaintiff may suffer from denial of his motion at this early stage.

**IV.     Public Interests**

Defendant contends that both the public and the CDOC have interests in ensuring that the prisons remain safe for all inmates and staff, and that the CDOC's medical professionals should not be precluded from exercising their professional judgment when treating patients. Plaintiff argues

that he has had suicidal thoughts while on the antipsychotic drugs, and that it cost the State of Colorado one million dollars in damages when another inmate committed suicide.

Since the Court has already determined that Plaintiff has not shown he is substantially likely to demonstrate Defendant violated his due process and Eighth Amendment rights, the Court finds that granting Plaintiff's motion would be adverse to the public interest in this case.

## **CONCLUSION**

In sum, the Court concludes that Plaintiff has not met his burden to show that a preliminary injunction, particularly one that is disfavored, is necessary in this case.  Therefore, this Court respectfully RECOMMENDS that the District Court find the Plaintiff has failed to demonstrate he is entitled to a preliminary injunction in this matter, and **DENY** the Plaintiff's request to "Stop Dr. Kaprivnikar Now!" [filed March 29, 2012; docket #26].

DATED this 14th day of May, 2012, in Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

9