IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-03344-REB-MEH

MEL BOMPREZZI,

      Plaintiff,

v.

DR. JOAN KAPRIVNIKAR,

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court are the Plaintiff's "Summary Judgment Request in the Plaintiff's Favor" [filed April 27, 2012; docket #39] and Defendant's Motion to Dismiss [filed May 14, 2012; docket #44]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the motions have been referred to this Court for recommendation.  (Docket #45.)  The matters are fully briefed, and the Court finds that oral argument would not materially assist in the adjudication of the motions.  For the reasons that follow, this Court respectfully recommends that Defendant's motion be **granted in part and denied in part** and Plaintiff's motion be **denied**.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

## BACKGROUND

I.   **Procedural History**

Plaintiff is a prisoner in Colorado proceeding *pro se* who initiated this civil rights action on December 21, 2011 by filing his Complaint; subsequently, on February 7, 2012, he filed an Amended Complaint, in accordance with a court order, alleging generally that Defendants Joan Kaprivnikar and the Colorado Department of Corrections (CDOC) violated his constitutional rights by administering "involuntarily" antipsychotic drugs to the Plaintiff.  Amended Complaint, docket #11 at 3.  Plaintiff contends that Dr. Kaprivnikar uses physical force to inject the drugs, and such drugs result in "body malfunctions."  *Id.*  On March 12, 2012, Senior Judge Babcock, on initial review, dismissed the CDOC as a Defendant in this matter.[2]  Docket #15.

Plaintiff filed the present request for summary judgment on April 27, 2012, before the deadline for Defendant's answer or other response to the Amended Complaint.  Defendant, then, timely filed the present motion to dismiss the Amended Complaint on May 14, 2012.  Because Defendant's motion simply challenges the Amended Complaint, the Court will begin with an analysis of the motion to dismiss.

II.   **Statement of Facts**

The following are factual allegations (as opposed to legal conclusions, bare assertions or merely conclusory allegations) made by the Plaintiff (or construed liberally) in the Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must limit its review to the four corners of the complaint, but may also consider documents attached to the complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred

---

[2]Consequently, Plaintiff's Claim Three for violations of his procedural due process rights was dismissed as well, as it was necessarily brought against the CDOC.

to in the complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

Starting November 7, 2011, and continuing to the present, Defendant Dr. Joan Kaprivnikar began a series of administering injections of antipsychotic medications into the Plaintiff. The Plaintiff objects to the injections as involuntary and claims that the medication has caused "body malfunctions," such as a chemically-induced anxiety attack, suicidal thoughts, severe feelings of discouragement, no motivation to carry out daily tasks, severe drowsiness, unexplained hunger, and a sensitivity to certain noises. Plaintiff contends that, although he peacefully objected to receiving the injections, prison guards forced him to be injected by holding him down with a "shocking mechanism" on his back. Plaintiff claims that such forced injections violate his rights against "slavery" under the Thirteenth Amendment, his due process rights under the Fourteenth Amendment, and his rights against cruel and unusual punishment under the Eighth Amendment.

## MOTION TO DISMISS

### I.    Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the

allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

## II.    Treatment of a Pro Se Plaintiff's Complaint

A federal court must construe a pro se plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id*. Accordingly, the court must "not supply additional facts, nor ... construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## III.     Analysis

Although Defendant asserts that the only remaining claim in this case is an Eighth Amendment claim, the Court concludes that it is charged by the Tenth Circuit with construing the Plaintiff's pleading liberally and reviewing the pleading to determine whether the facts state a valid claim upon which the Plaintiff might prevail.  With such charge in mind, the Court notes that, in addition to an Eighth Amendment claim, the Plaintiff plainly alleges what he claims to be a violation of the Thirteenth Amendment prohibiting slavery, but which the Court liberally construes as a Fourteenth Amendment due process claim based upon prevailing law.[3]  The Court will address each of these claims in turn.[4]

### A.     Thirteenth Amendment

The Court recommends finding that the Plaintiff states no claim for relief pursuant to the Thirteenth Amendment in this case.  "[B]y its express language, the Thirteenth Amendment's prohibition of slavery does not apply to the imprisonment of a person lawfully convicted of a crime." *Tracy v. Keating*, 42 F. App'x 113, 116 (10th Cir. 2002) (citing *United States v. Reynolds*, 235 U.S. 133, 149 (1914)).

Here, the Plaintiff contends that Defendant's "decision to involuntarily intoxicate me [with anti-psychotic medication] violates the U.S. Constitution's 13th Slavery Amendment because

---

[3]While Senior Judge Babcock, in his initial review, stated that "[t]he Eighth Amendment claim asserted against Defendant Kaprivnikar will be drawn to a district judge and magistrate judge" (Order, docket #15), he neither addressed nor analyzed whether the Thirteenth or Fourteenth Amendment claims should be dismissed in accordance with 28 U.S.C. § 1915A.  *See Leo v. Garmin Int'l*, 464 F. App'x 740, 742 (10th Cir. 2012) (citing *Copart, Inc. v. Admin. Review Bd.*, 495 F.3d 1197, 1201 (10th Cir. 2007) (explaining that the law of the case doctrine applies where, among other things, a court has decided a rule of law; not where an order does not explicitly decide an issue)).

[4]With respect to analysis of the Thirteenth and Fourteenth Amendment claims, the Court may *sua sponte* dismiss a claim based upon an affirmative defense when the defense is obvious from the face of the complaint and no further factual record is required to be developed.  *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006).

involuntary intoxication perpetration is not listed on my criminal mittimus." Amended Complaint, docket #11 at 3. Even if the Plaintiff were correct that involuntary medical treatment could overcome the rule stated in *Tracy* (which this Court highly doubts given the Tenth Circuit's and other appellate court's rulings concerning involuntary work assignments while incarcerated[5]), the Plaintiff fails to state a viable Thirteenth Amendment claim.

Although determined in the criminal context, the Tenth Circuit has found that, while the term "involuntary servitude" in the Amendment has a larger meaning than slavery, "the plain intention was ... to make labor free, by prohibiting that control by which the personal service of one man is disposed of or coerced *for another's benefit*, which is the essence of involuntary servitude." *United States v. Kaufman*, 546 F.3d 1242, 1262 (10th Cir. 2008) (quoting *Bailey v. Alabama*, 219 U.S. 219 (1911)) (emphasis added).   In this case, the Plaintiff fails to allege that any injections are forced or coerced *for another's benefit*, as required to show involuntary servitude. Accordingly, the Plaintiff fails to state a claim for relief under the Thirteenth Amendment, and the Court respectfully recommends that the District Court dismiss any such claim in this case.

B.    Eighth Amendment

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).   Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety." *Barney v.*

---

[5] *See, e.g., Tracy*, 42 F. App'x at 116; *see also Bowen v. Quarterman*, 339 F. App'x 479, 481 (5th Cir. 2009); *O'Connell v. Johnson*, 245 F. App'x 193, 194 (3d Cir. 2007); *Piatt v. MacDougall*, 773 F.2d 1032, 1035 (9th Cir. 1985).

*Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)).  Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993);  *Estelle*, 429 U.S. at 105.

Here, Defendant construes Plaintiff's claim as "asserting an Eighth Amendment claim for deliberate indifference to a serious medical need."  Motion, docket #44 at 5.  The Court finds that Plaintiff's complaint may be liberally construed as alleging either a "serious medical need" theory or "conditions of confinement" theory as described in *Helling, supra*.

       1.    "Serious Medical Need" theory

Plaintiff must meet both the objective and subjective components constituting the test for Eighth Amendment deliberate indifference of a serious medical need.  *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).  The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause."  *Id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006)).  "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).

To the extent that the Plaintiff's allegations may be construed as challenging Defendant's deliberate indifference to the physical harms caused by the injections of antipsychotic medication,[6]

---

[6]The Court is not persuaded by the Defendant's theory that Plaintiff alleges Defendant's deliberate indifference to his mental health.  Plaintiff's allegations do not support such theory.

the Court finds that such harms are not "sufficiently serious" to state the objective component of an Eighth Amendment claim. Plaintiff claims that, as a result of the medication, he suffers or has suffered a chemically-induced anxiety attack, suicidal thoughts, severe feelings of discouragement, no motivation to carry out daily tasks, severe drowsiness, unexplained hunger, and a sensitivity to certain noises. The Plaintiff makes no allegations concerning whether any of these ailments has been diagnosed by a doctor as requiring treatment and, as alleged, none of the ailments are "so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[7] Therefore, the Court concludes that the Plaintiff fails to allege the objective component of an Eighth Amendment claim based on a "serious medical need" theory.

Further, the Plaintiff fails to meet the subjective component of a "serious medical need" claim. The subjective component is met if a plaintiff demonstrates that a defendant "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)). Here, there are no allegations that Defendant knew the antipsychotic medication might harm the Plaintiff and disregarded the risk of such harm.

Consequently, the Court recommends that the District Court find the Plaintiff has failed to state an Eighth Amendment claim under a "serious medical need" theory in this case.

    2.      "Conditions of Confinement" theory

---

[7]The Court notes that the only ailment that may stand out as requiring a doctor's attention are the Plaintiff's suicidal thoughts. However, the Plaintiff fails to explain the frequency, duration and depth of such thoughts so that the Court might determine their "seriousness."

Alternatively, Plaintiff's allegations may be construed as: the conditions under which he is incarcerated – i.e., the use of force to inject antipsychotic medication against his will – pose a risk of serious damage to his health.

Conditions of confinement fall within the Eighth Amendment because they are part of the penalty that criminal offenders pay for their offenses. *Penrod*, 94 F.3d at 1405. "The Eighth Amendment 'does not mandate comfortable prisons,' and conditions imposed may be 'restrictive and even harsh.'" *Barney*, 143 F.3d at 1311 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981)). An important factor in determining whether conditions of confinement meet constitutional standards is the length of the incarceration. *Id.*

A prison official may be held liable for Eighth Amendment violations in denying humane conditions of confinement only if the official knows of and disregards an excessive risk to inmate health and safety. *Id.* at 1310 (quoting *Farmer*, 511 U.S. at 837). It is not enough to establish that the official should have known of the risk of harm. *Id.* Thus, to hold prison officials liable for violating an inmate's right to humane conditions of confinement, two requirements must be met. *Barney*, 143 F.3d at 1310. First, the deprivation alleged must be objectively sufficiently serious, depriving the inmate of the minimal civilized measures of life's necessities. *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) and *Rhodes*, 452 U.S. at 347) (internal quotations omitted). Second, the official must have a sufficiently culpable state of mind, which in this context means the official must exhibit deliberate indifference to a substantial risk of serious harm to an inmate. *Id.* (quoting *Farmer*, 511 U.S. at 834 and *Wilson*, 501 U.S. at 297) (internal quotations omitted).

With respect to Plaintiff's allegations of excessive force, the core inquiry is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, --

U.S. --, 130 S. Ct. 1175, 1178 (2010).  "The extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation."  *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).  In *Wilkins*, the Supreme Court reversed the dismissal of an excessive force claim in which the plaintiff prisoner alleged the defendant corrections officer slammed plaintiff onto a concrete floor, then proceeded to punch, kick, knee and choke the plaintiff without provocation.  *Id.* at 1177.

Here, the Plaintiff alleges he was "forcefully handcuffed and held down (with no resistence on [his] part)" at least four times to receive the anti-psychotic medications; he experienced a "forceful cell extraction" involving "an electric shock shield ... placed over [his] non-resistive body"; and "on more than one occasion, a hand held shocking device was placed against [his] back." Amended Complaint, docket #11 at 4-5.

Although not entirely clear from the allegations, the Court can reasonably construe that these actions against the Plaintiff were performed by prison guards.  *Id.* at 5.  The Plaintiff does not allege that Defendant personally participated in any of these events.  "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).  Further, there is no allegation that Defendant requested or ordered such action taken by the prison guards.  *See Dodds v. Richardson*, 614 F.3d 1185, 1200-01 (10th Cir. 2010) (there must be an affirmative link between actions taken by a defendant and any plan or policy put into effect that violates a plaintiff's constitutional rights).

Thus, the only "excessive force" the Plaintiff might allege against Defendant are the "mandated" injections of antipsychotic medication administered against his will since November 2011.  Following *Wilkins* and its progeny, the proper inquiry is whether the allegations demonstrate the injections were applied maliciously and sadistically to cause harm.  Here, the Court must

10

conclude that Plaintiff's allegations, while describing harms allegedly caused by the injections, do not demonstrate the Defendant acted maliciously and sadistically knowing that the injections would cause the harms Plaintiff allegedly suffers.

Therefore, because the Plaintiff's allegations fail to state claims for cruel and unusual punishment under either a "conditions of confinement" or a "serious medical need" theory, the Court recommends that the District Court grant Defendant's motion to dismiss Plaintiff's Eighth Amendment claim.

C.     Fourteenth Amendment

Plaintiff's allegation that "there were defects in the due process in order to force the drugs upon me, the plaintiff" (Amended Complaint, docket #11 at 3) might be construed to refer to his third claim for relief alleging procedural issues that arose in the administrative process, which was brought against the CDOC and dismissed with Senior Judge Babcock's March 12, 2012 order. However, construing the complaint liberally, the Court finds that Plaintiff's allegations may state a claim for substantive due process as well.

The Due Process Clause of the Fourteenth Amendment guarantees due process only when a person is to be deprived of life, liberty, or property.  U.S. Const. amend. XIV, § 1.  The Due Process Clause "shields from arbitrary or capricious deprivation those facets of a convicted criminal's existence that qualify as 'liberty interests.'" *Harper v. Young*, 64 F.3d 563, 564 (10th Cir. 1995), *aff'd*, 520 U.S. 143 (1997).  Thus, when an inmate alleges a violation of his due process rights, the court must first determine whether a liberty interest exists.  Liberty interests protected by the Fourteenth Amendment may arise either from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983), *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

Although the Defendant does not address the Plaintiff's potential substantive due process claim in her motion, she acknowledges that the "Supreme Court has recognized the 'significant liberty interest in avoiding the unwanted administration of antipsychotic drugs.'"  Motion, docket #44 at 5 (citing *Washington v. Harper*, 494 U.S. 210, 221 (1990)).

In *Washington*, the Supreme Court found that an offender "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment."  494 U.S. at 221-22.  The Court held, however, that "given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's best interest."  *Id.* at 227.  Thus, the involuntary administration of antipsychotic drugs that are prescribed, reviewed and ordered by a psychiatrist in the offender's medical interests, given the legitimate needs of the offender's institutional confinement, will meet the demands of the Due Process Clause.  *Id.* at 222.  "Prison officials have a duty to care for their inmate population, and using antipsychotic medications is an appropriate medical response in certain situations."  *Boyett v. County of Washington*, 282 F. App'x 667, 676-77 (10th Cir. 2008).

Plaintiff's allegations reflect that Defendant is forcing injections of antipsychotic drugs against his will and that he is suffering harms as a result of the injections.  The Court finds that Plaintiff states a viable liberty interest under the Due Process Clause of the Fourteenth Amendment.

Two strands of the substantive due process doctrine exist: "one strand protects an individual's fundamental liberty interests, while the other protects against the exercise of governmental power that shocks the conscience."  *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008).  "The Fourteenth Amendment forbids the government to infringe fundamental

liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Id.* (citing *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)) (emphasis in original). "Conduct that shocks the judicial conscience, on the other hand, is deliberate government action that is 'arbitrary' and 'unrestrained by the established principles of private right and distributive justice." *Id.* (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Although these strands are "two separate approaches to analyzing governmental action under the Fourteenth Amendment" ... "[b]oth approaches may well be applied in any given case." *Id.* at 769.

Regardless of whether application of the "fundamental interests" or "shocks the conscience" theories, or both, is appropriate, the Court finds that either or both inquiries would require a further argument by the Defendant and, likely, further development of the factual record in this case, particularly with respect to the Defendant's (and, perhaps, others') decision(s) and reasoning underlying the involuntary injections. Therefore, dismissal of Plaintiff's potential substantive due process claim at this stage of the litigation would be improper. *See Fogle*, 435 F.3d at 1258.

Accordingly, the Court recommends that the District Court construe the Amended Complaint to contain a potential claim for violation of due process under the Fourteenth Amendment, and deny the Defendant's motion to dismiss Plaintiff's complaint in this action.

## MOTION FOR SUMMARY JUDGMENT

Summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the

13

governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

On April 27, 2012, the Plaintiff filed a document titled, "Summary Judgment Request in the Plaintiff's Favor," which has been construed as a motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Approximately ten days later, Plaintiff filed an "Addendum to Summary Judgment Request," to which he attaches a document he characterizes as his "criminal mittimus."  Docket #41. Plaintiff seeks an order finding that, because the criminal mittimus does not list involuntary injections of antipsychotic medication to be forced upon him, Defendant has violated Plaintiff's right against slavery under the Thirteenth Amendment.  *Id.*  In addition, the Plaintiff seeks summary judgment on his Eighth Amendment claim "because of the life threatening and extremely debilitating side effects that are listed in the book entitled, The Physicians Desk Reference." Motion, docket #39.

First, the Court notes that Plaintiff's motion fails to comply with D.C. Colo. LCivR 56.1 by failing to provide the following: "a statement of undisputed facts and ... supported by argument and a recitation of legal authority incorporated into the motion."  Notwithstanding, the Plaintiff's motion fails in light of the findings made by this Court that Plaintiff has failed to state claims under the Eighth and Thirteenth Amendments as set forth herein.

Therefore, the Court respectfully recommends that the District Court deny the Plaintiff's motion for summary judgment.

14

**CONCLUSION**

In sum, the Court concludes that Plaintiff fails to state viable claims for relief under the Eighth and Thirteenth Amendments in this case, and recommends that the District Court dismiss them. At the same time, the Court finds that Plaintiff states a viable claim for violation of substantive due process under the Fourteenth Amendment.  Therefore, this Court respectfully RECOMMENDS that the District Court **GRANT IN PART AND DENY IN PART** the Defendant's Motion to Dismiss [filed May 14, 2012; docket #44] and **DENY** Plaintiff's "Summary Judgment Request in the Plaintiff's Favor" [filed April 27, 2012; docket #39] as set forth herein.

DATED this 3rd day of August, 2012, in Denver, Colorado.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge