IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-03344-REB-MEH

MEL BOMPREZZI,

      Plaintiff,

v.

DR. JOAN KAPRIVNIKAR,

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Before the Court is the Defendant's Motion for Summary Judgment [filed September 9, 2013; docket #87].  Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the motion has been referred to this Court for recommendation.  (Docket #88.)  The matter is briefed to the extent required by law and local rules, and the Court finds that oral argument would not materially assist in the adjudication of the motion.  For the reasons that follow, this Court respectfully recommends that the Defendant's motion be **granted**.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

## BACKGROUND

### I.     Procedural History

Plaintiff is a prisoner in Colorado proceeding *pro se* who initiated this civil rights action on December 21, 2011 by filing his Complaint; subsequently, on February 7, 2012, he filed the operative Amended Complaint in accordance with a court order alleging generally that Defendant has "involuntarily" administered antipsychotic drugs to the Plaintiff. Amended Complaint, docket #11 at 3. Plaintiff contends that the Defendant uses physical force to inject the drugs, and such drugs result in "body malfunctions." *Id.* On March 29, 2012, Plaintiff filed a motion titled "Stop Dr. Kaprivnikar Now!," which was construed as a motion for preliminary injunction. Docket #31. Following briefing on the motion, this Court recommended that the motion be denied. Docket #47.

Meanwhile, on May 14, 2012, Defendant filed a motion to dismiss Plaintiff's Amended Complaint containing what Defendant construed to be Plaintiff's Eighth Amendment claim. Docket #44. This Court recommended that the District Court construe the Amended Complaint as containing claims for violations of the Eighth, Thirteenth and Fourteenth Amendments. Docket #60. On March 18, 2013, the Honorable Robert E. Blackburn adopted the recommendation to grant Defendant's motion to dismiss Plaintiff's Eighth and Thirteenth Amendment claims, and to allow a Fourteenth Amendment substantive due process claim to proceed.[2] Docket #73. In addition, Judge Blackburn adopted this Court's recommendation to deny Plaintiff's motion for preliminary injunction. *Id.*

_____

[2] The Court agrees with Defendant that Judge Blackburn's order contains a typographical error concerning the remaining due process claim in this case. While Judge Blackburn adopted the recommendation "in its entirety," he also "denied" the motion to dismiss Plaintiff's "procedural due process claim" and "granted" the motion to dismiss the "substantive due process claim." *See* docket #73. However, this Court's recommendation notes that the procedural due process claim had been already dismissed in the initial review of the case and recommends that a substantive due process claim, liberally construed in Plaintiff's pro se pleading, be allowed to proceed in this litigation. Docket #60.

On April 22, 2013, Plaintiff again moved for preliminary injunctive relief seeking an order prohibiting Defendant from "forcefully administering to [Plaintiff] antipsychotic drugs because they interfere with [his] thought processes necessary to prosecute a legal case." Motion, docket #79 at 1. Two days later, this Court recommended that Plaintiff's motion be denied; that recommendation remains pending before Judge Blackburn.

Defendant timely filed the present motion for summary judgment on September 9, 2013. Defendant argues that the Plaintiff can demonstrate no genuine issues of material fact as to his remaining Fourteenth Amendment substantive due process claim. Specifically, Defendant claims that she administered involuntarily applications of psychotropic medication only after Plaintiff decided to stop taking the medication in November 2011 and became more disorganized, evidenced thought blocking, and wrote a number of unintelligible kites (written requests) and letters to CDOC staff threatening them. Defendant claims that her decision was supported by the unbiased opinions of a psychiatrist, psychologist and mental health clinician, none of whom regularly treated the Plaintiff. As such, Defendant seeks an order for summary judgment finding no genuine issues of material fact as to whether Defendant violated Plaintiff's constitutional rights and dismissing the remaining Fourteenth Amendment claim.

Although provided an opportunity to respond within the established briefing period, as well as permitted an extension of time within which to respond by this Court, the Plaintiff did not file a response to the present motion.[3]

---

[3]The Court learned through review of Defendant's exhibits that Plaintiff was transferred to the Colorado Mental Health Institute in Pueblo (CMHIP) on or about May 14, 2013; however, the present motion was mailed to Plaintiff on September 10, 2013 at the San Carlos Correctional Facility (docket #87 at 20). Accordingly, due to the lack of response from the Plaintiff, the Court ordered Defendant to inform the Court of the Plaintiff's whereabouts at the time the motion was served. Through a written supplement (docket #92), Defendant informed the Court that Plaintiff was moved back to San Carlos on September 13, 2013, that she never received a return mailing, and that it is likely, due to the time necessary to process mail at the facility, the Plaintiff received a copy of the motion at or after the time he returned to San Carlos. The Court agrees and finds that,

## II.      Findings of Fact

The Court makes the following findings of fact viewed in the light most favorable to the Plaintiff, who is the non-moving party in this matter.

1.      At all times relevant to the claims in the operative Amended Complaint, Plaintiff has been an inmate in the custody of the Colorado Department of Corrections ("CDOC").  Amended Complaint, docket #11 at 2.[4]

2.      At all times relevant to the claims in the operative Amended Complaint, Defendant Dr. Joan Koprivnikar has been a psychiatrist working in the CDOC. Exhibit A-1 to Motion, Affidavit of Joan Koprivnikar, M.D., ("Koprivnikar affidavit"), ¶¶ 1-3, docket #87-1.

3.      As a psychiatrist within the CDOC, Dr. Koprivnikar's responsibilities include the following: evaluating offenders for signs and symptoms of mental illness; providing a diagnosis of a mental illness, if present; treating the mental illness with psychotropic medications where appropriate; and evaluating the patient for any side effects either through conversation, observation or laboratory testing. *Id.* at ¶ 3.

4.      Dr. Koprivnikar's responsibilities also include evaluating offenders and recommending involuntary medication for individuals who may pose a danger to him or herself or to others, or who are gravely disabled. *Id.*

5.      The CDOC has an Administrative Regulation (AR) regarding Administering Involuntary Medication, AR 700-23, which outlines the procedures and responsibilities for administering

---

even if the Plaintiff did not receive a copy of the motion in September, the Court issued an order on October 4, 2013, which was mailed to the San Carlos facility (docket #89), extending the time for Plaintiff's response to the present motion.  However, the Court has received no response to the order or to the motion.

[4]Typically, in the summary judgment context, a pro se litigant's verified complaint may be treated as an affidavit as long as it satisfies the standards for affidavits outlined in Rule 56. *See Adams v. Dyer,* 223 F. App'x 757, 764 n.7 (10th Cir. 2007) (citing *Conaway v. Smith,* 853 F.2d 789, 792 (10th Cir. 1988)).

involuntary psychotropic medication to offenders in the CDOC's custody.  *Id.* at ¶ 4; *see also* AR 700-23, Exhibit A-1, Attachment 1, docket #87-1.

6.      Under AR 700-23, for involuntary medication to be approved, it must be demonstrated that the offender suffers from a mental disorder and, as a result of the disorder, constitutes a serious threat of harm to self or to others, or is gravely disabled, and that the administration of the medication is in the offender's medical interest.  *Id.* at ¶ 5; *see also* AR 700-23(IV)(A)(1).

7.      Such approval is provided only after a due process hearing, as set forth in AR 700-23. Koprivnikar affidavit, ¶ 6.

8.      However, involuntary medication may be administered on an emergency basis and ordinarily may be ordered after an in-person onsite evaluation in which a physician determines that the offender meets the criteria for emergency medication set forth in AR 700-23(IV)(B).  *Id.* at ¶ 7; *see also* AR 700-23(IV)(B)(2).

9.      Emergency medications must be reviewed and reordered daily and may be administered for a period up to a maximum of ten consecutive calendar days.  Koprivnikar affidavit, ¶ 8; *see also* AR 700-23(IV)(B)(4).

10.     Use of emergency medication orders more than twice for a specific offender within a three-month period will require approval by the CDOC chief psychiatrist, or designee, if an involuntary medication hearing has not been initiated. Koprivnikar affidavit, ¶ 9; *see also* AR 700-23(IV)(B)(8).

11.     An offender will be provided a due process hearing as soon as possible, either after emergency involuntary medication has been initiated or prior to the approval of the use of non-emergency involuntary medication.  Koprivnikar affidavit, ¶ 10.

12.     The offender is provided written notification of the hearing at least 24 hours prior to the scheduled due process hearing.  *Id.*; *see also* AR 700-23(IV)(c)(1)(a)(1).

13.     The hearing is set before the Involuntary Medication Hearing Committee ("Committee"),

which is composed of a psychiatrist, a psychologist, and one other mental health clinician. Koprivnikar affidavit, ¶ 11; *see also* AR 700-23(IV)(C)(1)(a)(10).

14.    In anticipation of the hearing, the treating physician prepares a complete evaluation for the Committee, which documents the offender's mental condition and includes, but is not limited to, the following:

     a.    The DSM-IV diagnosis;

     b.    Documentation that the offender presents a serious threat of harm to self or to others, or is gravely disabled; and

     c.    Methods used to motivate the offender to accept medication voluntarily and the offender's response to those efforts, the patient's expected prognosis, and behavior on and off medications.

Koprivnikar affidavit, ¶ 12; *see also* AR-700-23(IV)(B)(6).

15.    The written notification of the scheduled hearing provided to the offender includes copies of the psychiatrist's report and the unit clinician supervisor's report, which reflect the factual basis for the diagnosis and why it is believed that involuntary medication is appropriate.  Koprivnikar affidavit, ¶ 14; *see also* AR 700-23(IV)(C)(1)(a)(2).

16.    The offender has an opportunity to be present and to be heard at the hearing and is permitted to present evidence, including witnesses. The offender is also permitted to cross examine CDOC employees or contract witnesses who are called by the facility.  Koprivnikar affidavit, ¶ 15; *see also* AR 700-23(IV)(C)(1)(a)(4) – (6).

17.    During the hearing, the offender may have a competent representative designated by the facility's administrative head to advise him or her during the hearing process.  Koprivnikar affidavit, ¶ 16; *see also* AR 700-23(IV)(C)(1)(a)(8).

18.    The offender's representative is a CDOC employee or contract worker who is not involved

in the offender's current treatment and who is provided ample time to review the case and discuss it with the offender prior to the hearing.   Koprivnikar affidavit, ¶ 17; *see also* AR 700-23(IV)(C)(1)(a)(8).

19.     An offender may appeal, in writing, the decision from an "initial" or "180-day" Involuntary Medication Hearing.  Koprivnikar affidavit, ¶ 18; *see also* AR 700-23(IV)(C)(1)(a)(9).

20.     Dr. Koprivnikar was Plaintiff's treating psychiatrist from approximately January 8, 2008 to May 9, 2012, when she was notified that Plaintiff had sued her in this action.  Koprivnikar affidavit, ¶ 19.

21.     During the treatment period, Dr. Koprivnikar made recommendations that Plaintiff be placed on involuntary medication during two formal hearings, one in December 2011 and the other in May 2012.  *Id.* at ¶ 20.

22.     For the first hearing, Dr. Koprivnikar drafted a Report of Involuntary Medication Hearing on November 14, 2011, which she updated on December 1, 2011, detailing Plaintiff's history and the reasons that she sought to have Plaintiff placed on involuntary medication.  *Id.* at ¶ 21; *see also* Exhibit A-1 to the motion, Attachment 2.  The report contains the following observations and conclusions by Dr. Koprivnikar:

    a.     During a staff meeting with Plaintiff on November 7, 2011, Dr. Koprivnikar discussed with Plaintiff the possibility of petitioning for involuntary medications.

    b.     This meeting was scheduled because Ms. Bonino, Plaintiff's treating clinician, notified Dr. Koprivnikar that she had received a kite [a written request for an appointment] from Plaintiff requesting to see Dr. Koprivnikar regarding "mood swings" and "scabs on [his] nose." In the kite, Bomprezzi further wrote that, "I would like a tox screen of urine and blood. I have my own November 4th, still, sample in my cell."

c.      Staff investigated Plaintiff's statement and found a cup of urine dated "November 4th."

d.      Ms. Bonino indicated to Dr. Koprivnikar in writing that "[she] looked in his cell and there was paper, trash, spoons, clothes, etc strewn all over. His TV was in his locker box, it was on, but not on a channel. When I [Ms. Bonino] tried to talk with him, he kept saying 'Why?... why?'"

e.      Ms. Bonino also noted that, "Inmate [Plaintiff] also wrote a threatening letter to an officer and lieutenant. The letter rhymed, like a song, basically accusing them of stalking him and spraying him with pepper spray and he would go into battle with them."

f.      During the November 7, 2011 meeting, Plaintiff refused to answer most questions, he appeared to be experiencing thought blocking, and gave those in the room [including Dr. Koprivnikar] long, angry stares.   At times, Plaintiff appeared disorganized and psychotic.

g.      When Plaintiff did answer questions during the meeting, his responses were often unrelated to the question asked or he parroted questions back at Dr. Koprivnikar and Ms. Bonino.

h.      In the past, Plaintiff had been offered and refused psychotropic medications on many occasions and even when he was taking his medications, he would often request a decrease in dosage against the advice of his psychiatrist.

i.      By the time of the meeting, Plaintiff had decompensated since he decided to stop taking his psychotropic medication.  Because of his disorganization, Dr. Koprivnikar believed that Plaintiff was at a higher risk of inadvertent dangerous behavior.

j.      The meeting was terminated due to non-progression, but Plaintiff refused to leave

even after several orders to do so.

k.      An officer asked that Dr. Koprivnikar and Ms. Bonino leave the room and another officer came in to assist with moving Plaintiff back to his room.  Plaintiff was passively resisting, but not in a loose, relaxed way - he appeared tense and angry.

l.      At that time, Dr. Koprivnikar became concerned of Plaintiff's dangerousness to others.  Dr. Koprivnikar believed that a staff member or another offender should not have to be physically harmed prior to involuntary medications being initiated; therefore, she recommended that Bomprezzi be placed on involuntary medications.

m.      Dr. Koprivnikar believed that when Plaintiff was placed on medication, he would become more organized, and less psychotic and certainly less of a danger to others.

n.      Conversely, off his medication, Plaintiff would have continued to decompensate and would likely end up hurting another offender or a staff member.

o.      Dr. Koprivnikar has observed that when decompensated, Plaintiff is demanding, narcissistic, sexually inappropriate, can be verbally and physically threatening, at time disorganized and unpredictable.

p.      As a result and pursuant to her report, Dr. Koprivnikar recommended that Plaintiff's medications be continued on an involuntary basis for the next 180 days.

Koprivnikar affidavit, ¶¶ 21-38.

23.     On November 7, 2011, Defendant determined to impose upon the Plaintiff involuntary applications of anti-psychotic medication.  Amended Complaint, docket #11 at 3.

24.     On November 18, 2011, after refusing to take the prescribed emergency medication, Zyprexa, Plaintiff was injected with Haldol and Cogentin, which then caused a chemically-induced anxiety attack.  *Id.* at 4.

25.     Between November 7, 2011 and November 18, 2011, Plaintiff had refused to take the

prescribed emergency medications at least four times and, each time, was forcefully injected with Haldol and Cogentin. The injections were painful. Once, an electric shock shield was placed over Plaintiff's body until he was moved into another room for the injection. A hand-held shocking device was placed against Plaintiff's back on more than one occasion to force Plaintiff to take the injections. *Id.* at 4-5.

26.     Plaintiff participated in an involuntary medication hearing that was held on December 5, 2011. *Id.* at ¶ 39.

27.     He was provided with notice of that hearing on December 2, 2011. *Id.* at ¶ 40; *see also* Notice of Hearing, Exhibit A-1, Attachment 3, docket #87-1 at 46.

28.     The notice advised Plaintiff of his rights including, but not limited to, his right to be present at the hearing, present evidence including witnesses, the right to a representative, and a right to appeal. Exhibit A-1, Attachment 3, docket #87-1 at 46.

29.     Plaintiff was present during the December 5, 2011 hearing and exercised his right to remain silent. *Id.* at 38.

30.     At the conclusion of the hearing, the Involuntary Medication Committee approved the request for placement of Plaintiff on involuntary medication for 180 days. *Id.* at 37.

31.     During the following six-month period, Plaintiff continued to deny having a mental illness or needing medication. Koprivnikar affidavit, ¶ 42. Plaintiff indicated numerous times that he would not take his medication on a voluntary basis; however, Defendant believed that if Plaintiff did not take the prescribed medication, he would decompensate and be at risk of harming others. *Id.* at ¶ 43.

32.     In May 2012, Plaintiff's treating physician at that time, Julie Meeker, M.D., recommended that Plaintiff continue to be placed on involuntary medication. Exhibit A-1 to the motion, Attachment 4, docket #87-1 at 58.

33.     Plaintiff was provided notice of the May 21, 2012 hearing on May 18, 2012.  Notice of Hearing, Exhibit A-1, Attachment 4, docket #87-1 at 68.  The notice advises Plaintiff of his rights including, but not limited to, his right to be present at the hearing, to present evidence including witnesses, to have a representative at the hearing, and to appeal the decision.  *Id.*  A handwritten note on the notice states, "no witnesses requested."  *Id.*  Plaintiff signed the notice.  *Id.*

34.     Plaintiff was further provided with an opportunity to appeal the decision made by the Involuntary Medication Hearing Committee.  *Id.*

35.     At the conclusion of the May 18, 2012 hearing, the Involuntary Medication Hearing Committee, none whom were the same committee members from the December 5, 2011 hearing, determined to administer involuntary medication for the Plaintiff for an additional180 days.  *Id.* at 58.

36.     This year, Plaintiff was provided, but refused to sign, a Notice of Hearing on May 10, 2013, because it was recommended by his current treating psychiatrist, Lisa Toepp, M.D., that he be medicated involuntarily for another 180 days due to his mental health issues and to ensure the safety of others.  See Exhibit A-2 to the motion, docket #87-2 at 11.

37.     Dr. Toepp's recommendation was considered by the Involuntary Medication Hearing Committee, made up of health professionals different than those at the May 2012 hearing, after a due process hearing held on May 13, 2013.  *Id.* at 2.

38.     The decision of the Committee was that involuntary medication was warranted for the next 180 days.  *Id.*

## **LEGAL STANDARDS**

### I.     **Treatment of a *Pro Se* Plaintiff's Pleadings**

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not

supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## II.    Dismissal under Fed. R. Civ. P. 56

Summary judgment serves the purpose of testing whether a trial is required.  *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law.  *Id.* at 323; *see also Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002) ("[s]ummary judgment is not proper merely because [plaintiff] failed to file a response").

If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. *Hysten v. Burlington Northern and Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002); Fed. R. Civ. P. 56(e). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1256 (10th Cir. 2005).

## DISCUSSION

Here, the Plaintiff filed no response to the present motion although provided ample time within which to do so. However, even if the Plaintiff fails to present evidence demonstrating an issue of material fact in response to the summary judgment motion, the Defendant still bears the burden of demonstrating she is entitled to summary judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. "Accordingly, summary judgment is 'appropriate' under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c)." *Murray v. City of Tahlequah, Oklahoma*, 312 F.3d 1196, 1200 (10th Cir. 2002). "If the evidence produced in support of the summary judgment motion does not meet this burden, summary judgment must be denied even if no opposing evidentiary matter is presented." *Id.* (internal quotation marks and citation omitted). "If the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden

of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Id.*

To meet her burden of production required to support summary judgment, the Defendant "need only point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 674 (10th Cir. 2002) (citation omitted). "Summary judgment will then lie if the movant establishes entitlement to judgment as a matter of law given [the] uncontroverted, operative facts." *Id.* Irrelevant or unnecessary factual disputes will not be considered. *Id.*

In this case, Defendant asserts qualified immunity for any claim of the violation of substantive due process under the Fourteenth Amendment, which may be construed from the operative Amended Complaint. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). The privilege is an immunity from suit rather than a mere defense to liability. *Id.* When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

The Supreme Court has discarded a review process that required courts to examine the elements of qualified immunity sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly

established at the time of the alleged violation.  *Pearson*, 555 U.S. at 232-44.  *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

The Court will begin by analyzing whether Defendant has demonstrated no genuine issue of material fact exists as to Plaintiff's Fourteenth Amendment claim, and if Defendant has not, the Court will proceed to determine whether genuine issues exist concerning whether the Plaintiff's constitutional rights were clearly established at the time of the alleged violation.

As concluded in this Court's recommendation on Defendant's motion to dismiss and affirmed by Judge Blackburn, Plaintiff's allegation that "there were defects in the due process in order to force the drugs upon me, the plaintiff" (Amended Complaint, docket #11 at 3) might be construed liberally to state a claim for substantive due process, which is the only remaining claim in this case.  In the present motion, Defendant also refers to a possible procedural due process claim; however, Plaintiff's third claim for relief alleging procedural issues that arose in the administrative process was dismissed by Senior Judge Babcock in his March 12, 2012 order.  *See* docket #15.

The Due Process Clause of the Fourteenth Amendment guarantees due process only when a person is to be deprived of life, liberty, or property.  U.S. Const. amend. XIV, § 1.  The Due Process Clause "shields from arbitrary or capricious deprivation those facets of a convicted criminal's existence that qualify as 'liberty interests.'"  *Harper v. Young*, 64 F.3d 563, 564 (10th Cir. 1995), *aff'd*, 520 U.S. 143 (1997).  Thus, when an inmate alleges a violation of his due process rights, the court must first determine whether a liberty interest exists.  Liberty interests protected by the Fourteenth Amendment may arise either from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983), *overruled in part on other grounds by Sandin v. Conner*,

515 U.S. 472 (1995).

The "Supreme Court has recognized the 'significant liberty interest in avoiding the unwanted administration of antipsychotic drugs.'" *Washington v. Harper*, 494 U.S. 210, 221 (1990)). In *Harper*, the Supreme Court found that an offender "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." 494 U.S. at 221-22. The Defendant does not contest, and the Court recommends finding, that Plaintiff alleges a viable liberty interest under the Due Process Clause of the Fourteenth Amendment.

The *Harper* Court held, however, that "given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's best interest." *Id.* at 227. Thus, the involuntary administration of antipsychotic drugs that are prescribed, reviewed and ordered by a psychiatrist in the offender's medical interests, given the legitimate needs of the offender's institutional confinement, will meet the demands of the Due Process Clause. *Id.* at 222. "Prison officials have a duty to care for their inmate population, and using antipsychotic medications is an appropriate medical response in certain situations." *Boyett v. Cnty. of Washington*, 282 F. App'x 667, 676-77 (10th Cir. 2008).

Here, the undisputed facts demonstrate that, without administration of the antipsychotic medication, Plaintiff becomes disorganized, evidences thought blocking, rebukes authority, uses vulgar, offensive language, behaves in a sexually inappropriate manner, and threatens prison staff with violence. Defendant testified that, although Plaintiff did not become violent when he refused to leave the conference room on November 7, 2011, she observed that Plaintiff was disorganized and psychotic, and he gave her and her colleague long, angry stares. Defendant noted that, before the meeting, Plaintiff had refused to take antipsychotic medications and was "demanding, narcissistic,

sexually inappropriate, can be verbally and physically threatening, at time[s] disorganized and unpredictable." Koprivnikar affidavit, ¶ 37. Conversely, Defendant asserts that when Plaintiff was placed on medication, "he would become organized, and less psychotic and certainly less of a danger to others." *Id.*, ¶ 36.

Defendant approved the use of "emergency" involuntary medication on November 7, 2011, then recommended Plaintiff be placed on involuntary medication for an additional 180 days. In accordance with facility regulations, a hearing occurred on December 5, 2011 before a committee of three health professionals who did not treat the Plaintiff; at the hearing, the Plaintiff was allowed a representative, the ability to question witnesses, and to offer evidence, but he decided to "remain silent." The committee determined that Plaintiff should be placed on involuntary medication for an additional 180 days. Then, in May 2012, the Plaintiff again appeared for a hearing before a committee of three health professionals who did not treat him and who were different than those sitting on the December 2011 committee. The May 2012 committee determined to place Plaintiff on involuntary medication for an additional 180 days.

Based upon these undisputed facts, the Court recommends that the District Court find Defendant has met her burden to demonstrate no genuine issues of material fact exist concerning a violation of Plaintiff's substantive due process rights.

Plaintiff attests in his Amended Complaint that the forced injections were painful, that on one occasion an electric shock shield was placed over Plaintiff's body until he was moved into another room for the injection, and that a hand-held shocking device was placed against Plaintiff's back on more than one occasion to force Plaintiff to take the injections. Two strands of the substantive due process doctrine exist: "one strand protects an individual's fundamental liberty interests, while the other protects against the exercise of governmental power that shocks the conscience." *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008). "The Fourteenth

17

Amendment forbids the government to infringe fundamental liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Id.* (citing *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)) (emphasis in original). "Conduct that shocks the judicial conscience, on the other hand, is deliberate government action that is 'arbitrary' and 'unrestrained by the established principles of private right and distributive justice.'" *Id.* (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).  Although these strands are "two separate approaches to analyzing governmental action under the Fourteenth Amendment" ... "[b]oth approaches may well be applied in any given case." *Id.* at 769.

The Court concludes that the conduct alleged by prison staff does not "shock the judicial conscience" as conduct that is arbitrary and unrestrained.  When a complaint alleges arbitrary governmental action, taken without due process, courts focus on three factors: "(1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the state actor." *Porro v. Barnes*, 624 F.3d 1322, 1326 (10th Cir. 2010).  However, "in each instance, the focus must always be on the *defendant* – on the force *he* used or caused to be used, and on *his* motives." *Id.* at 1327 (emphasis in original).

First, with respect to the alleged conduct surrounding preparing Plaintiff for the injections, such conduct is not alleged against the Defendant.  That is, Plaintiff does not allege that Dr. Koprivnikar "placed a hand-held shocking device against [Plaintiff's] back on more than one occasion" to force Plaintiff to take the injections.  Therefore, such conduct cannot be found to violate the Fourteenth Amendment here.

Second, with respect to the actual injections, Plaintiff alleges that the medication has caused feelings of discouragement, no motivation to carry out daily tasks, face and scalp picking, and feelings of not wanting to go on with his life.  Amended Complaint, docket #11 at 5.  Other than these self-supporting statements, Plaintiff presents no other evidence of any injury from the

injections of antipsychotic medication.   As such, Plaintiff's statements are conclusory and self-serving and, thus, unpersuasive.  *See, e.g., Garrett v. Hewlett–Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002) ("We do not consider 'conclusory and self-serving affidavits.'").  Further, the Court has already found no issues of material fact exist concerning the need for administering involuntary medication to the Plaintiff.  Finally, the record lacks any evidence suggesting that Defendant bore malice against the Plaintiff or was motivated by an improper purpose.  *See Seegmiller*, 528 F.3d at 767 ("only the most egregious official conduct can be said to be arbitrary in the constitutional sense.").  Accordingly, the Court recommends finding that Defendant's conduct in administering involuntary medication to the Plaintiff neither "shocks the judicial conscience" nor violates Plaintiff's substantive due process rights.

## CONCLUSION

In sum, the Court concludes that Defendant has met her burden to show that no genuine issues of material fact exist demonstrating any violation of Plaintiff's Fourteenth Amendment substantive due process right against the administration of involuntary medication.  Therefore, this Court respectfully RECOMMENDS that the District Court find the Defendant is entitled to summary judgment as to Plaintiff's sole remaining claim, and **GRANT** the Defendant's Motion for Summary Judgment [filed September 9, 2013; docket #87].

DATED this 29th day of October, 2013, in Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

19